IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| AVA ALEKSANDROV<br>26625 Ridge Road<br>Damascus, Maryland 20872,<br><br>*On Behalf of Herself and*<br>*All Others Similarly Situated*,<br><br>PLAINTIFF,<br><br>B-K-J COMPANY, INC.<br>5310 Dogwood Road<br>Baltimore, Maryland 21207,<br><br>    Serve On:<br>    Anthony Scott Braglio<br>    3014 Hernwood Road<br>    Baltimore, Maryland 21163,<br><br>and<br><br>ANTHONY SCOTT BRAGLIO<br>5310 Dogwood Road<br>Baltimore, Maryland 21207,<br><br>DEFENDANTS. | Case No.: _____ |

## CLASS ACTION AND COLLECTIVE ACTION COMPLAINT

Plaintiff Ava Aleksandrov ("Plaintiff"), by and through undersigned counsel, on behalf of herself and all others similarly situated, hereby submit this Class Action and Collective Action Complaint against B-K-J Company, Inc., d/b/a The Mill Stream Inn ("Millstream") and Anthony Scott Braglio ("Braglio") (collectively referred to herein as "Defendants") to recover unpaid wages and statutory damages under the Federal Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), the Maryland Wage and Hour Law, Maryland Code Annotated, Labor and Employment Article §§ 3-401 *et seq.*, ("MWHL"), and the Maryland

Wage Payment and Collection Law, Maryland Code, Labor and Employment Article §§ 3-501 *et seq*. ("MWPCL").

## PARTIES AND JURISDICTION

1. Plaintiff is an adult resident of the State of Maryland. At all times relevant, Plaintiffs performed work at Defendants' Millstream Inn in Baltimore, Maryland. The named Plaintiff's consent to participate as a plaintiff in an FLSA collective action is attached hereto as Exhibit 1.

2. Millstream is a corporation formed under the laws of the State of Maryland with its principal place of business located in Baltimore, Maryland. At all times relevant Millstream has done business as an exotic dance club in Baltimore, Maryland.

3. Braglio is the President and primary owner of Millstream.

4. At all times relevant, Braglio was in charge of the day-to-day operations of Millstream.

5. At all times relevant, Braglio was Plaintiff's supervisor and made all decisions relating to Plaintiff's rate and method of pay, shift pay employees were required to pay to work for Braglio, and fines assessed against employees.

6. At all times relevant, Braglio individually was responsible for maintaining all employment records for Plaintiff and all other similarly situated exotic dancer employees.

7. At all times, Millstream was Plaintiff's "employer" for purposes of the FLSA, MWHL, and MWPCL.

8. At all times, Braglio was Plaintiff's "employer" for purposes of the FLSA, MWHL, and MWPCL.

9.      At all times, Defendants were engaged in commerce within the meaning of § 3(s)(1) of the FLSA (29 U.S.C. 203(s)(1)).

10.     At all times, Defendants had gross annual revenues exceeding $500,000.00 and otherwise qualified as an "enterprise" within the meaning of § 3(s)(1) of the FLSA (29 U.S.C. § 203(r)).

11.     At all times, Plaintiff was an individual employee engaged in commerce or the production of goods for commerce as required by 29 U.S.C. §§ 206, 207.

12.     This Court has jurisdiction over Defendants pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b), and 28 U.S.C. § 1337 relating to "any civil action or proceeding arising under any Act of Congress regulating commerce . . . ."  Subject matter jurisdiction is invoked under 28 U.S.C. § 1331 relating to Federal Question jurisdiction.  Venue in this Court is proper pursuant to 28 U.S.C. § 1391.

## FACTS

13.     Plaintiff was employed by Defendants as an exotic dancer since 2008.

14.     While in Defendants' employ, Plaintiff worked six days a week for eight hour shifts for approximately 18 months during the period of April 16, 2011, to present time.

15.     While in Defendants' employ, Plaintiff worked approximately 38 hours a week for 18 months during the period of April 16, 2011, to present time.

16.     At all times during Plaintiff's employ, Defendants had knowledge that Plaintiff worked the hours referenced in ¶¶ 14 and 15 above, and suffered or permitted Plaintiff to work these hours each week.

17. Defendants scheduled Plaintiff to work shifts, required that she work those shifts, and fined her a financial sum or otherwise penalized her if she was late or failed to work those shifts.

18. While in Defendants' employ, Plaintiff regularly worked weeks for Defendants during which Plaintiff worked more than forty hours a week.

19. At all times, Defendants' had knowledge Plaintiff worked more than forty hours per week and suffered, permitted, or required Plaintiff to work more than forty hours per week.

20. At all times throughout Plaintiff's employment, Defendants utterly failed to pay Plaintiff for any wages for work duties performed.

21. At all times throughout Plaintiff's employment, Plaintiff and all other exotic dancer employees were employees of Defendants and were never independent contractors.

22. Defendants classified Plaintiff and all others similarly situated as Independent Contractors.

23. Defendants at all times controlled all aspects of Plaintiff's, and all others similarly situated, job duties through strictly enforced employment rules; including but not limited to mandatory schedules, mandatory meetings, and mandatory marketing efforts for which Plaintiff and all others similarly situated were not paid.

24. Defendants hired Plaintiff and all other similarly situated employees and, at all times, had the ability to discipline them, fine them, fire them, and schedule and adjust of their schedules.

25. Defendants, at all times, supervised Plaintiff's work duties and the work duties of all others similarly situated to make sure Plaintiff's job performance and the job performance of other employees was of sufficient quality.

26. At all times, while Plaintiff and all others similarly situated were employed by Defendants, their pay and opportunity for wages and income were limited to the pay method set exclusively by Defendants.

27. Defendants controlled all aspects of setting and enforcing the work schedule for Plaintiff and all others similarly situated.

28. Plaintiff and all others similarly situated were never able to make more money or enjoy more financial benefits if and when Defendants were operating successfully or realizing increased or additional profits.

29. At no time did Plaintiff, nor all others similarly situated, make a financial investment in Defendants' business operation or any equipment belonging to Defendants.

30. To perform work duties that Plaintiff, and all others similarly situated for Defendants, Plaintiff and all others similarly situated did not have or need any required certificate, education, or specialized training.

31. At all times while Plaintiff and all others similarly situated were employed by Defendants, Defendants were in the business of operating a night club featuring exotic dancers.

32. At all times while Plaintiff and all others similarly situated were employed by Defendants, Plaintiff's job duties were directly related to exotic dancing performances for Defendants' customers.

33. Plaintiff and all others similarly situated did not perform work that is exempt from the minimum wage requirement of the FLSA or MWHL or the overtime requirement of the FLSA.

## FEE AND FINE SYSTEM – Pre-2014

34. In addition to failing to pay Plaintiff and all others similarly situated wages for hours worked, Defendants enforced a series of fees and fines requiring Plaintiff and all others similarly situated to actually pay Defendants, as well as Defendants' bartenders, DJs, and bouncers, a significant portion of the money they received as tips from customers.

35. On a typical shift, Plaintiff and other exotic dancer employees actually paid Defendants, through fines, fees, and charges, approximately one hundred thirty dollars ($130.00) or more. The fines and fees paid by Plaintiff and other exotic dancer employees by Defendants included a mandatory "tip-in" and/or "tip out" to Defendants, mandatory tip sharing of Plaintiff's and other exotic dancer employees' tips to Defendants' non-tipped employees, deductions by Defendants from Plaintiff's and other exotic dancer employees' tips received from Defendants' customers for each performance of private and semi-private dances, and general and often substantial deductions for fees, fines, and charges associated with violating Defendants' "employment rules."

36. Defendants' "employment rules" were often arbitrarily enforced resulting in employees being fined more on nights where they received more tips from customers.

37. The net result of Defendants' fee and fine system was the regular hourly rate for Plaintiff and all others similarly situated is actually properly calculated in the negative.[1]

## FEE AND FINE SYSTEM – 2014

38. In 2014, Defendants implemented a new system wherein Defendants increased "shift-pay" and increased fines for its exotic dancer employees.

---

[1] -$130.00 per shift X 8 shifts per typical shift = -$16.25 per hour for each hour worked. Thus, for each hour Plaintiffs worked, Plaintiffs are owed the difference between their net-negative regular hourly rate (approximately -$ 16.25 per hour) and the Federal/Maryland Minimum Wage ($7.25 per her), an amount equal to approximately $23.50 per hour.

6

39. Defendants' also implemented a scheme wherein employees were refused the ability to work, or refused the ability to provide private dances, thereby being denied pay and tips if they did not agree to the new fees and fines.

40. Defendants also implemented a "tax" system wherein Defendants took additional shift-pay monies from each employee and purported to return that "tax" as a minimum wage to the employee.

41. In April of 2014, Defendants implemented a system wherein Defendants withheld return of these tips, which Defendants misclassified as minimum wage payments, unless employees signed an agreement wherein they agreed to waive any rights employees may have under the FLSA.

42. At no time was Plaintiff or any other similarly situated employee been guaranteed a minimum wage by Defendants, and indeed, some employees ended an eight hour shift owing money to Defendants and unable to return to work or provide private dances until they pay Defendants what Defendants arbitrarily dictates as owed in fines and fees.

## EQUITABLE TOLLING

43. At all times during the course of Plaintiff's employment with Defendants, Defendants did not post or otherwise make visible or available at Defendants' places of business any poster or information that notified Plaintiff or other exotic dancer employees of the Federal or Maryland minimum wage or overtime compensation requirement.

44. At all times during the course of Plaintiff's employment with Defendants, Defendants did not post or otherwise make visible or available at Defendants' places of business any poster or information that notified employees of any enforcement remedies available to Plaintiff or other exotic dancer employees who are or were not paid by employers as required by the FLSA or Maryland Law, including notification that the Maryland or United States Department of Labor may recover back wages on behalf of employees or that underpaid employees have a private right of

action to file a lawsuit against employers for nonpayment or underpayment of wages in violation of Federal and Maryland Law.

45. At all times during the course of Plaintiff's employment with Defendants, Defendants did not post or otherwise make visible or available at Defendants' places of business any poster or information that notified Plaintiffs or other exotic dancer employees of the fact that Federal and Maryland law prohibits discriminating against, retaliating against, or discharging workers who file a Complaint or participate in any proceeding to recover unpaid or underpaid wages under Federal or Maryland Law.

46. At all times during Plaintiff's employment, Defendants explicitly advised Plaintiff and other exotic dancer employees that Plaintiff and other exotic dancer employees were not entitled to be paid at an hourly rate at least equal to the Federal and Maryland minimum wage rate.

47. At all times during Plaintiff's employment, Defendants explicitly advised Plaintiff and other exotic dancer employees that Plaintiff and other exotic dancer employees were not entitled to be paid at an hourly rate at least equal to the Federal and Maryland overtime rate for hours worked each week in excess of forty (40) each week.

48. At all times during Plaintiff's employment, Defendants engaged in egregious and intimidating behavior to threaten and intimidate Plaintiff and other exotic dancer employees of the risk of physical harm to Plaintiff and other exotic dancer employees (and their family members) as well as retaliatory employment consequences if Plaintiff or other exotic dancer employees took legal action to recover unpaid wages under Federal and Maryland law.

49. In consideration of the foregoing, it is proper and equitable for this Court to toll the statute of limitations for the Federal and Maryland minimum wage and overtime claims for Plaintiff and all class members for the entirety of Plaintiff's employment through the present.

## CLASS ACTION ALLEGATIONS

50. The class members are current and former exotic dancer employees of Defendants, who (1) Defendants suffered or permitted to work without pay for non-overtime and overtime hour worked as required by Maryland law and/or (2) current and former exotic dancer employees who were the victims of Defendants' scheme to unlawfully deduct, and, as a consequence, fail to pay wages to Plaintiffs as required by the MWPCL.

51. The class members are defined as those employees who fall within one of the following classes:

> **CLASS I:** All current and former exotic dancer employees employed by Defendants who were paid at a regular hourly rate less than the Maryland Minimum Wage for hours worked while in Defendants' employ;
>
> **CLASS II**: All current and former exotic dancer employees employed by Defendants who were subject to, or required to pay Defendants, required fines, fees, and charges to Defendants resulting in deductions from their wages in violation of the MWPCL.

52. On information and belief, during the period of Plaintiff's employment, Defendants employed two hundred (200) or more exotic dancer employees who were subject to Maryland wage payment violations, for which relief is sought in Class I, Class II, or both Classes.

53. The MWHL and MWPCL claims arising under this Complaint are properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

54. Class I and Class II are believed to be at least two hundred (200) or more current and former exotic dancer employees of Defendants, making joinder of all members impracticable.

55. The named Plaintiff will adequately represent the interest of the class members because they are similarly situated to the class members and their claims are typical of, and concurrent to, the claims of the other class members.

56. There are no known conflicts of interest between the Plaintiff and the other class members.

57. Class counsel, Ken C. Gauvey and The Law Practice of Ken C. Gauvey, are qualified and able to litigate Plaintiff's and the class members' claims.

58. The law firm that represents Plaintiff and the class members concentrates its practice in employment litigation, and its attorneys are experienced in class action litigation, including class actions arising under Federal wage and overtime laws.

59. Common questions of law and fact predominate in this action because all of the class' claims implicate the same wage laws of the State of Maryland.

60. The class action is maintainable under Federal Rule 23 because the class action is superior to other available methods for the fair and efficient adjudication of the controversy alleged herein.

61. The prosecution of separate actions by or against individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for the party opposing the class, and adjudications with respect to individual members of the class that would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

62. Absent this action, the Plaintiff and the class members likely will not obtain redress of their injuries and Defendants would retain the proceeds of their violations of the laws of Maryland.

## COLLECTIVE ACTION ALLEGATIONS

63. In addition to pursuing this action as a Class Action for MWHL and MWPCL violations under Federal Rule of Civil Procedure 23, Plaintiffs are pursuing this action as an FLSA collective action on behalf of themselves and all other similarly situated individuals.

64. The collective action includes two (2) classes of current and former exotic dancer employees including (1) a collective action class of individuals who were not paid by Defendants at

an hourly rate for non-overtime hours worked at an hourly rate at least equal to the FLSA minimum wage rate and (2) a collective action class for individuals who were not paid by Defendants for overtime hours worked each week at an hourly rate at least equal to the overtime rate required by the FLSA.

65. In the present case, the questions of law or fact common to the members of the collective action class predominate over any questions affecting only individual collective action class members.

66. The essence of this entire case is the Plaintiff and other similarly situated individuals were improperly classified as independent contractors, were paid no wages for hours worked, and were subject to a series of unlawful fees and fines resulting in Plaintiff and each putative class member receiving a "net negative" regular hourly rate for all hours worked each week, including overtime hours worked each week in excess of forty (40).

67. Common to Plaintiff and all collective action class members is that each individual received wages from Defendants at a rate less than what is required by the FLSA for non-overtime hours and overtime hours worked each week.

68. Specifically, Plaintiff and each collective action class member are seeking the difference between their net-negative regular hourly rates and the legally required minimum wage and overtime rate and statutory damages from Defendants under the FLSA.

69. In the present case, the number of collective action class members is believed to exceed two hundred (200) current and former exotic dancer employees.

70. All class members are readily identifiable from information and records, on information and belief, in the possession and control of the Defendants.

## CAUSES OF ACTION

### COUNT 1:
### Violation of the Federal Fair Labor Standards Act

71. Plaintiff re-allege and reassert each and every allegation set forth in Paragraphs 1-70 above as if each were set forth herein.

72. Section 206(a)(l) of the FLSA provides that no employer shall employ any employee for an hourly wage of less than the federal minimum wage, currently $7.25 per hour.

73. At all times, Plaintiff and other exotic dancer employees were "employees" covered by the FLSA, 29 U.S.C. § 206(a)(l).

74. At all times, both Defendants were Plaintiff's "employers" and the employers of other exotic dancer employees under the FLSA.

75. Defendants, as employers for Plaintiff and other exotic dancer employees, were obligated to compensate Plaintiff and other exotic dancer employees for all hours worked at an hourly rate not less than the Federal Minimum Wage.

76. At all times, Defendants paid Plaintiff and other exotic dancer employees no wages for hours worked.

77. More exactly, when the fees and fines that Defendants deducted from Plaintiff's personal monies and the personal monies of other exotic dancers are factored in, Defendants paid Plaintiff and other exotic dancer employees a net average hourly rate equal to approximately negative sixteen dollars and twenty-five cents (-$16.25) per hour.

78. At all times relevant, the net negative hourly rate paid by Defendants to Plaintiff and other exotic dancer employees fell below the applicable Federal Minimum Wage.

79. "The FLSA allows employers to pay less than minimum wage to employees who receive tips .... The mechanism it creates to allow employers to pay less than minimum wage is the "tip credit."  *See* 29 U.S.C. § 203(m)).

12

80. Employers may only take a tip credit if certain requirements are met. See 29 U.S.C. § 203(m). Namely, (1) the employer must give the employee proper notice of taking a tip credit; (2) the employee must retain all of her tips except for those lawfully shared with other employees; and (3) the employee, through her tips, must make up the difference between the tipped minimum wage and full minimum wage-if she does not, the employer must pay the her the difference in wages. See id.; 29 C.F.R. § 531.59.

81. Here, Defendants did not give Plaintiff or other exotic dancer employees any notice that Defendants were taking or intended to take the tip credit.

82. Here, Defendants took, and kept for their own use, a portion of Plaintiff's tips and the tips of other exotic dancer employees, and, as a consequence, Plaintiff and other exotic dancer employees did not retain all of their tips received from Defendants' customers.

83. Here, Defendants did not pay Plaintiff and other exotic dancer employees cash wages at least equal to the "tip credit" minimum wage amount.

84. Because the three (3) "tip credit" requirements were not met by Defendants, Defendants cannot avail themselves of the FLSA's "tip credit" in calculating back wages owed to Plaintiff and other exotic dancer employees.

85. Defendants have failed and refused to compensate Plaintiff and other exotic dancer employees at an hourly rate at least equal to the Federal Minimum Wage as required by the FLSA for numerous hours worked.

86. Defendant's failure and refusal to pay compensation to Plaintiff and other exotic dancer employees as required by the FLSA was willful and intentional, and not in good faith.

WHEREFORE, Defendants are liable, jointly and severally, to Plaintiff (and all others similarly situated who have joined in this suit) for unpaid minimum wages in such amounts as are

proven at trial, plus an equal amount in liquidated damages, interest (both pre- and post-judgment), attorney's fees, the costs of this action, and any other and further relief this Court deems appropriate.

## COUNT 2:
### Violation of Federal Fair Labor Standards Act
### (Overtime)

87. Plaintiff re-allege and reassert each and every allegation set forth in Paragraphs 1-86 above, as if each were set forth herein.

88. Section 207(a)(l) of the FLSA provides that no employer shall employ any of its employees for a workweek longer than forty (40) hours unless such employee receives compensation for her employment in excess of the hours above specified at a rate not less than the higher of one-and-one-half times the regular rate at which she is employed or one-and-one half times the Federal Minimum Wage.

89. At all times, Plaintiff and other exotic dancers were "employees" covered by the FLSA, 29 U.S.C. § 207(a)(l), and both Defendants were Plaintiff's "employers" and the "employers" of other exotic dancer employees under FLSA, 29 U.S.C. § 207(a)(2).

90. Defendants, as employers of Plaintiff and other exotic dancer employees, were obligated to compensate Plaintiff and other exotic dancer employees at the overtime rate of one-and-one-half times the higher of their regular rate of pay or one-and-one-half times the applicable Federal Minimum Wage for all hours worked per week in excess of forty (40).

91. As set forth above, while in Defendants' employ, Plaintiff and other exotic dancer employees regularly worked more than forty (40) hours per week.

92. For all overtime hours worked in excess of forty (40) by Plaintiff and other exotic dancer employees, Defendants failed and refused to pay Plaintiff and exotic dancer employees any wages and, in fact, paid Plaintiff and other exotic dancer employees a net-negative regular hourly rate.

93. Defendant's failure and refusal to pay Plaintiff and other exotic dancer employees as required by the FLSA for overtime hours worked each week was willful and intentional, and was not in good faith.

WHEREFORE, Defendants are liable, jointly and severally, to Plaintiff (and all other similarly situated individuals that join this action) under Count II for all unpaid overtime wages in such amounts as are proven at trial, plus an equal amount in liquidated damages, interest (both pre- and post-judgment), reasonable attorney's fees, the costs of this action, and any other and further relief this Court deems appropriate.

## COUNT 3:
### Violation of Maryland Wage and Hour Law

94. Plaintiff re-allege and reassert each and every allegation set forth in Paragraphs 1-93 above, as if each were set forth herein.

95. Plaintiff and other exotic dancer employees were "employees" and both Defendants were Plaintiff's "employers" and "employers" of other exotic dancer employees within the meaning of MWHL.

96. As "employers" of Plaintiff and other exotic dancer employees, Defendants were obligated to pay Plaintiff and other exotic dancer employees wages at least equal to $7.25 per hour, the Maryland Minimum Wage.

97. As set forth above, while in Defendants' employ, Plaintiff and other exotic dancer employees worked many hours for which Defendants failed and refused to properly compensate Plaintiff and other exotic dancer employees as required by the MWHL for all hours worked.

98. Unpaid minimum wage compensation is therefore due and owing to Plaintiff and other exotic dancer employees under the MWHL.

99. Defendants' failure to comply with their obligations under MWHL to pay Plaintiff and other exotic dancer employees for all hours worked as required by the MWHL was willful and intentional, and was not in good faith.

WHEREFORE, Defendants are liable, jointly and severally, to Plaintiff (and all other similarly situated individuals) under Count III for unpaid wages in such amounts as are proven at trial, plus interest (both pre- and post-judgment), reasonable attorney's fees, the costs of this action, and any other and further relief this Court deems appropriate.

## COUNT 4:
### Violation of the Maryland Wage Payment and Wage Collection Law

100. Plaintiff re-allege and reassert each and every allegation set forth in Paragraphs 1-99 above, as if each were set forth herein.

101. Plaintiff and other exotic dancer employees were "employees," and Millstream was their "employer" within the meaning of the MWPCL.

102. Under MWPCL, Millstream, as the MWPCL employer for Plaintiff and other exotic dancer employees, was obligated to pay Plaintiff and other exotic dancer employees all wages due for all work performed.

103. Habitually, over the course of Plaintiff's employment, Millstream made deductions and made withholdings from Plaintiff's pay and the pay of other exotic dancer employees.

104. Deductions and withholdings made by Millstream included, but were not limited to, late fees, stage fees, fines for violations of club rules, mandatory payments to Millstream's not customarily tipped employees, payments to Millstream's jukebox, and fines and fees for failures by Plaintiffs and other exotic dancer employees to meet minimum quotas on sales of promotional items and drinks.

105. Deductions and withholdings made by Millstream were never authorized by Plaintiff or other exotic dancer employees and were not otherwise allowable by Maryland law.

106. Millstream's taking of deductions and withholdings from Plaintiff's pay and the pay of other exotic dancer employees resulted in a failure by Millstream to pay Plaintiff and other exotic dancer employees all wages due and promised for worked performed as required by the MWPCL.

107. As a consequence of the foregoing, Millstream did not pay Plaintiff and other exotic dancer employees all wages due and owing on time, at the end of their employment with Millstream, or at any time thereafter.

108. Millstream's failure to pay Plaintiff and other exotic dancers all wages due for work performed, and taking of unauthorized and unlawful withholdings and deductions from Plaintiff's pay and the pay of other exotic dancer employees was willful and intentional, was not the result of any *bona fide* dispute, and was not in good faith.

WHEREFORE, Millstream is liable to Plaintiff and all other similarly situated individuals under Count IV, for all unpaid and/or improperly deducted wages in such amounts to be proven at trial, plus three (3x) times the amount of unpaid and/or improperly deducted wages as additional damages, interest (both pre- and post-judgment), attorney's fees, costs, and any other further relief this Court deems appropriate.

Respectfully submitted,

/s/Ken C. Gauvey
Ken C. Gauvey (Bar No. 28464)
The Law Practice of Ken C. Gauvey
841 East Fort Avenue, #208
Baltimore, MD 21230
(P) (410) 346-2377
(F) (866) 487-1154
kgauvey@gauveylaw.com