## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

AVA ALEKSANDROV, *et al.*                  *

      **Plaintiffs/Counter-Defendants,**     *

v.                                         *

B-K-J COMPANY, INC., *et al.*,             *        Civil Action No. 1:14-cv-1328-CCB

                                                 *

      **Defendants/Counter-Plaintiff.**       *

*   *   *   *   *   *   *   *   *   *   *   *   *

### COUNTERCLAIM OF DEFENDANT B-K-J COMPANY, INC.

Defendant/Counter-Plaintiff B-K-J Company, Inc. ("B-K-J Company"), by and through its undersigned counsel, submits this Counterclaim against Plaintiff/Counter-Defendant Ava Aleksandrov ("Plaintiff/Counter-Defendant" or "Aleksandrov"), and against the putative members of the purported class of allegedly similarly situated individuals identified in the Complaint, including but not limited to any individuals who subsequently submit notice of their intention to participate in this action, and hereby states as follows:

### COUNTERCLAIM PARTIES

1.      B-K-J Company is, and at all times relevant hereto was, a corporation organized under the laws of the State of Maryland which operates an establishment known as The Millstream Inn, at which dance performances have been offered to patrons by independent contractors.

2.      Plaintiff/Counter-Defendant Ava Aleksandrov is, and at all relevant times was, an adult natural person who at various times performed as an exotic dancer at the Millstream Inn.

3.      As defined herein, the allegations set forth in the following Counterclaims extend to Plaintiff/Counter-Defendant any and all persons deemed to be members of any Plaintiff/Counter-Defendant class that subsequently may be certified in the above-captioned action, as well as any persons permitted to proceed collectively against B-K-J Company by virtue of having been deemed similarly situated to Aleksandrov, or the designated representatives of any such Plaintiff/Counter-Defendant class.

## FACTS COMMON TO EACH COUNTERCLAIM COUNT

4.      At all times relevant hereto, Plaintiff/Counter-Defendant performed as an exotic dancer who presented dance performances at The Millstream Inn.

5.      At all times, Plaintiff/Counter-Defendant performed as an independent contractor under an agreement with B-K-J Company under which she was permitted to appear, and agreed to appear at The Millstream Inn on dates and at times that were mutually agreeable to Plaintiff/Counter-Defendant and B-K-J Company.

6.      Plaintiff/Counter-Defendant agreed to present and perform dances at The Millstream Inn directly for the patrons of The Millstream Inn, and solely in exchange for compensation paid directly by the patrons of The Millstream Inn to Plaintiff/Counter-Defendant.

7.      The Plaintiff/Counter-Defendant had no job duties and no work responsibilities at The Millstream Inn other than to present dance performances—as an independent contractor—on the dates and at the times upon which Plaintiff/Counter-Defendant and B-K-J Company agreed, and solely in exchange for compensation paid directly by the patrons of The Millstream Inn to the Plaintiff/Counter-Defendant.

8.      B-K-J Company and Plaintiff/Counter-Defendant entered into an agreement under which she would be permitted to present exotic dance performances within The Millstream Inn,

and would also have the opportunity to perform Table Dances and VIP Dances for patrons of

The Millstream Inn.  A designated fee was charged to customers for Table Dances and VIP

Dances.  B-K-J Company and Plaintiff/Counter-Defendant agreed that in connection with each

VIP Dance performed by Plaintiff/Counter-Defendant, 50% of the fee charged to customers

would be collected from the customer by B-K-J Company as a rental fee for the VIP room, and

the remaining 50% of the fee would be paid by the customer to Plaintiff/Counter-Defendant and

retained by her.  For example, for a fifteen-minute "VIP Dance" performed by Plaintiff/Counter-

Defendant, B-K-J Company would collect $75 from the customer as the rental fee for the VIP

room, and Plaintiff/Counter-Defendant would retain the remaining $75 of the total $150 fee

charged to the patron.  B-K-J Company and the Plaintiff/Counter-Defendant agreed that in

connection with each "Table Dance" performed by the Plaintiff/Counter-Defendant, the

Plaintiff/Counter-Defendant would retain the full $20 fee paid by the customer for the Table

Dance by virtue of the Plaintiff/Counter-Defendant's status as an independent contractor.

   9.  In exchange for Plaintiff/Counter-Defendant's agreement to enter into the

aforementioned arrangement, B-K-J Company provided the Plaintiff/Counter-Defendant with the

venue in which to perform, security, dressing facilities, music and other amenities.

   10.  B-K-J Company facilitates the VIP Dances and Table Dances performed by

Plaintiff/Counter-Defendant in numerous ways, including by making the availability of these

opportunities known to patrons, providing security for the Plaintiff/Counter-Defendant,

providing the venue in which the dances occur, and providing music to which the

Plaintiff/Counter-Defendant can perform.

   11.  In addition to dance performances for individual customers, Plaintiff/Counter-

Defendant was provided the opportunity to present dance performances on the main stage of The

Millstream Inn, in exchange for which Plaintiff/Counter-Defendant received and retained whatever gratuities that appreciative patrons chose to give to Plaintiff/Counter-Defendant.

12.     In addition to any fees received and retained by Plaintiff/Counter-Defendant in connection with VIP Dances and Table Dances, Plaintiff/Counter-Defendant also received gratuities above and beyond the set fees.  These are in addition to any gratuities they might receive in connection with dances performed on the main stage.  Aleksandrov, and with near certainty all Plaintiffs/Counter-Defendants who may be joined in any Plaintiff/Counter-Defendant class, each received in excess of $30.00 monthly in such tip income.

13.     Plaintiff/Counter-Defendant was not required to give advance notice of her schedule nor was she required to work particular days, weeks or hours.

14.     There were no required shifts and/or time limits for Plaintiff/Counter-Defendant; however, The Millstream Inn operates for only a portion of each day, with the operating hours varying depending upon the day of the week.

15.     Plaintiff/Counter-Defendant was advised of, and voluntarily agreed to abide by the terms referenced herein, and was given to understand, and did understand, and had represented, that she was not an employee of B-K-J Company, but rather an independent contractor whose sole compensation came from whatever fees and gratuities were provided by patrons in exchange for dance performances.

16.     At all times relevant hereto, Plaintiff/Counter-Defendant represented to B-K-J Company that she would  perform, and agreed to perform, as an independent contractor subject to the terms outlined herein, and did so knowingly, and willingly.

17.     At all times relevant hereto, Plaintiff/Counter-Defendant performed at The Millstream Inn in exchange for compensation she received from patrons.

18.     At all times relevant hereto, Plaintiff/Counter-Defendant was an adult under no legal disability that would impair or restrict her ability to enter freely and knowingly into a contractual relationship with B-K-J Company.

19.     Plaintiff/Counter-Defendant freely and knowingly entered into an agreement to perform as an independent contractor on the terms described herein, and did in fact so perform.

20.     Plaintiff/Counter-Defendant at all relevant times had the freedom to determine if and when she would perform at The Millstream Inn, the content and nature of her own dance performances, the circumstances and occasions on which she would provide private dances to patrons, and whether and when she would perform on The Millstream Inn's main stage. Plaintiff/Counter-Defendant collected compensation which she received from patrons in exchange for the dances she performed.

21.     On each individual date, and during each week, that Plaintiff/Counter-Defendant performed, Plaintiff/Counter-Defendant received compensation for her performance in excess of what she would have earned at minimum wage had she been an employee of B-K-J Company.

22.     Plaintiff/Counter-Defendant adopted patterns and practices of conduct contrary to those which characterize an employment relationship, including but not limited to: deciding if and when she would perform at The Millstream Inn, determining the nature and character of her performances, deciding for which patrons, if any, she would perform private dances, and deciding when, if at all, she would perform on The Millstream Inn's main stage. Plaintiff/Counter-Defendant did not perform any job duties or act in any capacity other than as a dancer, nor did Plaintiff/Counter-Defendant submit to the type of control and supervision which characterized B-K-J Company's relationship with its actual employees.

23.     Plaintiff/Counter-Defendant, by her actions and by her express and implied representations, refused and eschewed an employer-employee relationship.  Instead, Plaintiff/Counter-Defendant acknowledged and manifested an intention to enter into an independent contractor relationship and conduct herself as an independent contractor.

24.     At no point did Plaintiff/Counter-Defendant seek, intend or manifest an intention to enter into an employer-employee relationship with B-K-J Company under which she would be compensated at a set hourly wage.

25.     At no point prior to the commencement of this action did Plaintiff/Counter-Defendant manifest to B-K-J Company a desire, intention, or claim that she was subject to the rights, obligations, or terms of the Fair Labor Standards Act ("FLSA"), the Maryland Wage-Hour Law ("MWHL"), or the Maryland Wage Payment and Collection Law ("MWPCL").  Nor did Plaintiff/Counter-Defendant make any claim or assertion of right to minimum wage or overtime payment.  Nor did Plaintiff/Counter-Defendant assert or allege that she was misclassified as an independent contractor or disclaim the financial or other benefits that she received as an independent contractor.

26.     On or about April 1, 2014, B-K-J Company chose to cease having independent contractor relationships with its exotic dancers and reclassified all of its exotic dancers as employees who were paid wages, which were subject federal and state mandated withholdings.

27.     Plaintiff/Counter-Defendant was one such individual who became an employee of B-K-J Company on or about April 1, 2014.  After becoming an employee, Plaintiff/Counter-Defendant objected to the fact that her relationship with B-K-J Company had changed to one of employer/employee and told B-K-J Company's owner, Defendant Anthony Scott Braglio ("Braglio"), that she would prefer to go back to being an independent contractor because she did

not like having taxes and other withholdings deducted from her paycheck, and she believed she could make more money as an independent contractor.  Plaintiff/Counter-Defendant repeatedly asked Braglio to have B-K-J Company reclassify her as an independent contractor.

28.     Plaintiff/Counter-Defendant materially benefitted from her independent contractor relationship with B-K-J Company, but having done so, she now seeks to deny and repudiate that relationship in order to seek payment of minimum wages and overtime and to avail herself of other benefits under the FLSA, the  MWHL and the MWPCL.

29.     Had the Plaintiff/Counter-Defendant been an actual employee of B-K-J Company, B-K-J Company would have been entitled to claim the tip credit for any gratuities provided to the Plaintiff/Counter-Defendant by patrons, under either or both the FLSA and/or the MWHL.

<u>**COUNT ONE**</u>
**BREACH OF CONTRACT**

30.     B-K-J Company incorporates the allegations of each of the foregoing Paragraphs 1-29 as if fully set forth herein.

31.     Plaintiff/Counter-Defendant and B-K-J Company entered into a contractual relationship under which Plaintiff/Counter-Defendant agreed to provide entertainment services solely as an independent contractor according to the terms described herein.

32.     In consideration of the promises of Plaintiff/Counter-Defendant, B-K-J Company allowed Plaintiff/Counter-Defendant to present dance performances at The Millstream Inn, to retain fees charged to patrons for VIP Dances and Table Dances, and to accept gratuities from patrons.

33.     B-K-J Company reasonably relied, in good faith and to its own detriment, on the representations and promises of Plaintiff/Counter-Defendant to provide services as an independent contractor on the terms described herein.

1266832.2 07/09/2014

34.     B-K-J Company so relied in structuring its business relationships, in forming its business plan, in preparing and paying taxes and otherwise.

35.     Plaintiff/Counter-Defendant knowingly and purposefully induced B-K-J Company to rely upon her promises in this regard, with the intention that it so rely.

36.     B-K-J Company at all times and in good faith provided Plaintiff/Counter-Defendant with the benefits and opportunities that together comprised the consideration for the contractual relationship that existed between them, and Plaintiff/Counter-Defendant realized and retained the benefit of her bargain with B-K-J Company.

37.     By claiming retroactively that she was an employee, and not properly compensated for services which she promised to render as an independent contractor, Plaintiff/Counter-Defendant has breached her independent contract with B-K-J Company.

38.     As a direct and proximate result of this breach, B-K-J Company has suffered substantial actual and consequential damages in an amount to be ascertained prior to and proved at trial.

## COUNT TWO
## UNJUST ENRICHMENT

39.     B-K-J Company incorporates the allegations of each of the foregoing Paragraphs 1-38 as if fully set forth herein.

40.     At all times relevant hereto, B-K-J Company has provided the Plaintiff/Counter-Defendant the benefit and advantage of providing services as an independent contractor, and the Plaintiff/Counter-Defendant has knowingly accepted and retained those benefits, including the freedom, flexibility, and tax advantages of such a relationship.

41.     As a result of its treatment of Plaintiff/Counter-Defendant as an independent contractor, to which treatment the Plaintiff/Counter-Defendant willfully consented, B-K-J

Company failed to retain the full share of the revenues, including charges for VIP Dances and Table Dances, generated by Plaintiff/Counter-Defendant.

42.     Should Plaintiff/Counter-Defendant prevail in her claim in this action, she will be substantially and unjustly enriched at the expense of B-K-J Company, which will be substantially and unjustly harmed.

43.     B-K-J Company is therefore entitled to an award of all minimum fees for VIP Dances and Table Dances which were retained by Plaintiff/Counter-Defendant.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, B-K-J Company, Inc., having stated its claims against Plaintiff/Counter-Defendant in its Counterclaim, hereby demands judgment against Plaintiff/Counter-Defendant Ava Aleksandrov, and any other Plaintiffs/Counter-Defendants who are named as part of any class that may be certified in this action, and each of them, as follows:

A.     For the return of all amounts retained by the Plaintiff/Counter-Defendant representing charges to patrons for VIP Dances and Table Dances;

B.     For restitution, including a return of all amounts retained by Plaintiff/Counter-Defendant representing charges for VIP Dances and Table Dances, or for set offs against any award of wages, overtime payments, or other amounts to which the Plaintiff/Counter-Defendant may be found entitled in this action, in the amount of the VIP Dance and Table Dance charges retained by the Plaintiff/Counter-Defendant;

C.     For such damages as are established at trial; and

D.     For such other and further relief which the Court deems just and proper.

Respectfully submitted,

_____/s/_____
Harriet E. Cooperman, Bar No. 00729
Anne E. Di Salvo, Bar No. 30200
**SAUL EWING LLP**
500 E. Pratt Street, Suite 900
Baltimore, Maryland  21202
(410) 332-8974 (telephone)
(410) 332-8973 (facsimile)
hcooperman@saul.com
adisalvo@saul.com

*Attorneys for Defendants*
*B-K-J Company, Inc. and*
*Anthony Scott Braglio*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 9th day of July, 2014, a true and correct copy of the foregoing Counterclaim of Defendant B-K-J Company, Inc. was electronically filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the following:

> Ken C. Gauvey, Bar No. 28464
> The Law Practice of Ken C. Gauvey
> 841 East Fort Avenue, #208
> Baltimore, MD 21230
> kgauvey@gauveylaw.com

                              /s/
                              Anne E. Di Salvo